NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SAMANTHA M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.G., *Appellees*.

No. 1 CA-JV 16-0266
FILED 1-19-2017

Appeal from the Superior Court in Maricopa County
No. JD528640
The Honorable James P. Beene, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffman
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Samuel E. Vederman[1] joined.

---

**C A T T A N I**, Judge:

¶1        Samantha M. ("Mother") appeals the superior court's ruling restricting visitation with her daughter, M.G., to supervised telephonic visits.  For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        M.G. was born in June 2013 to Mother and Matthew G. ("Father").[2]  In May 2015, the court found M.G. dependent as to Mother and Father and ordered family reunification services, including visitation. Although the original case plan was family reunification, M.G.'s case plan has since been changed to severance and adoption.  She has been placed with her paternal aunt since the initiation of dependency proceedings.

¶3        After M.G. was found dependent, Mother was allowed to have twice-weekly supervised in-person visits with M.G.  These visits continued for one month, until Mother was incarcerated for burglary and trafficking in stolen property in June 2015.  Mother had video visits with M.G. while in jail, and in-person visits during a brief release in November 2015.  According to the Department of Child Safety ("DCS") case manager assigned to the family, M.G. did well during visits before and during Mother's incarceration, but became "withdrawn" after the in-person visits while Mother was released.

¶4        Since November 2015, Mother has been incarcerated at the state prison in Perryville; Father is currently incarcerated at the state prison in Tucson.  Both will be incarcerated until at least 2019.  After Mother was

---

[1]        The Honorable Samuel E. Vederman, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]        Father is not a party to this appeal.

incarcerated, M.G.'s maternal grandmother facilitated periodic telephonic visits with M.G. without the knowledge of M.G.'s case manager. According to the case manager, M.G. has behaved erratically since Mother has been in prison, particularly after visits with her grandmother.

**¶5**        In April 2016, Mother filed a motion to permit visitation. DCS opposed, citing a psychologist's recommendation that Mother and Father not have visitation time with M.G. After an evidentiary hearing, the superior court granted Mother and Father weekly supervised telephonic visits with M.G. The court imposed this limitation on visitation because of M.G.'s recent negative behavior, the psychologist's opinion that visitation would not be beneficial, and the potential consequences of transporting M.G. between her placement and two different prisons. Mother timely filed this appeal, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 8-235(A).[3]

## DISCUSSION

**¶6**        Mother argues that the superior court's order infringes on her fundamental right to associate with her child. A parent has a constitutionally-protected right to "the companionship, care, custody, and management of his or her children." *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). This right extends to incarcerated parents, who "retain the right of reasonable visitation with their children." *Michael M. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 198, 200, ¶ 8 (App. 2002). However, a court may impose restrictions or limitations if visitation will "endanger seriously the child's physical, mental, moral or emotional health." *Maricopa Cty. Juv. Action No. JD-5312*, 178 Ariz. 372, 376 (App. 1994); *see also Michael M.*, 202 Ariz. at 201, ¶ 11.

**¶7**        The superior court has broad discretion in determining whether to permit or limit visitation. *JD-5312*, 178 Ariz. at 375. We defer to the superior court's determination regarding the weight and credibility of evidence unless it is clearly erroneous, and will uphold the order restricting visitation if any evidence supports it. *Id.* at 375–76.

**¶8**        Although the superior court did not make a specific finding that in-person visitation would endanger M.G., such a finding is implicit in the court's decision. *Cf. Roberto F. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 45, 52, ¶ 34 (App. 2013). And the superior court had sufficient evidence to

---

[3]        Absent material revisions after the relevant date, we cite a statute's current version.

conclude that in-person visitation with Mother would endanger M.G.'s well-being. M.G.'s case worker testified that M.G.'s behavior had declined since Mother's incarceration, and that these behavioral problems were apparently exacerbated by her intermittent telephonic interactions with Mother. Furthermore, a psychologist opined that contact between M.G. and her parents "could be detrimental." And the court reasonably concluded that M.G. could be further harmed if she were frequently transported between two prison facilities, especially given that she had shown signs of confusion about the permanency of her situation.

**¶9** Mother argues that *Michael M.*, 202 Ariz. at 201, ¶¶ 11–13, requires a more specific evidentiary basis for restricting a parent's visitation rights. But in *Michael M.*, this court overturned a termination of visitation rights where the record was "devoid of *any evidence* . . . that allowing [the father] to visit with [his daughter] at the jail would be harmful to the child." *Id.* at ¶ 13 (emphasis added). In contrast, the superior court's decision here was supported by specific evidence of M.G.'s behavioral changes following in-person and telephonic visits with Mother and M.G.'s increased confusion in the months after Mother's incarceration at Perryville. *See JD-5312*, 178 Ariz. at 376–77 (upholding termination of visitation rights where the superior court found, among other considerations, that visitation was "confusing and disruptive for the children").

## CONCLUSION

**¶10** For the foregoing reasons, we affirm the superior court's order limiting Mother to weekly supervised telephonic visits with M.G.

